**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JUNE 12, 2002**

BARAGA COUNTY, BARAGA TOWNSHIP,
L'ANSE TOWNSHIP, ROSEMARY
HAATAJA, and AMY ST. ARNOLD,

    Plaintiffs-Appellees,

v                                      No. 118922

STATE TAX COMMISSION,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE COURT

CAVANAGH, J.

    This is an action seeking an order of mandamus. The State Tax Commission seeks a determination whether a consent judgment entered by the Michigan Tax Tribunal is enforceable against defendant, which was not a party to the action before the tribunal.

    We hold that the consent judgment is not enforceable against defendant because defendant was not a party to the tribunal proceedings. Under the rules of how privity applies

among governmental units that we adopt today, we further hold that privity does not exist in this case to bind the state by a judgment entered into by a subordinate political division. Therefore, we reverse the decision of the Court of Appeals and remand to the trial court for entry of a denial of plaintiffs' request for an order of mandamus.

I

The history of this case dates back to 1992, when the State Treasurer petitioned the Baraga Circuit Court for the right to sell properties for delinquent taxes. The properties were owned by members of the Keweenaw Bay Indian Community (KBIC), including plaintiffs in this case, Haataja and St. Arnold, and was located within the boundaries of the community's reservation. The property owners objected, arguing that under an 1854 treaty between the United States and the Chippewa, the state of Michigan lacked jurisdiction to impose ad valorem property taxes on lands owned by members of the KBIC and located within the boundaries of the community's reservation.

After losing in the circuit court, the property owners filed petitions with the tribunal, naming L'Anse Township and Baraga Township[1] as respondents. Baraga County intervened in

---

[1] Some of the property in question is located in one township and some in the other township.

2

the tribunal proceedings as a respondent.  A settlement was reached during the tribunal proceedings, which resulted in a consent judgment being entered in May 1994.  Although the properties owned by tribal members residing within the reservation boundaries were to be "removed" from the tax and assessment rolls and were listed as exempt, the townships and county were required to have their township assessors continue to assess the properties in the same way they assess nontribal member owned property and to maintain such information separately.  This was to allow for the proper calculation of "payment in lieu of taxes" to be billed to the KBIC, which was to make a payment in lieu of taxes for the full amount of the tax that would be due if the property were owned by a nontribal member.  For almost five years, the townships, the KBIC, and tribal members apparently abided by the consent judgment.

On December 28, 1998, defendant issued Bulletin No. 18, regarding Indian-owned lands.  In that bulletin, defendant notified local assessors of the June 8, 1998, decision of the United States Supreme Court in *Cass Co, Minn v Leech Lake Band of Chippewa Indians*, 524 US 103; 118 S Ct 1904; 141 L Ed 2d 90 (1998).  The bulletin indicated that it was defendant's position that Indian lands owned in trust by the United States Government were exempt from the Michigan General Property Tax,

MCL 211.1 *et seq*. Lands owned in fee by individual Indians or Indian communities were not exempt and were assessable. Defendant further advised local assessors that any Indian lands not held in trust by the United States that had been previously exempted were no longer qualified for such exemption and should be placed upon the assessment rolls. Defendant also advised local assessors that agreements to exempt from, and accept payments in lieu of, taxes were not authorized by law, and that appropriate steps should be taken to correct these situations.

Pursuant to Bulletin No. 18, the assessor for L'Anse and Baraga Townships contacted defendant in regard to certain lands within the townships that had previously been exempted through the May 1994 consent judgment. The assessor was advised to place the previously exempted properties on the assessment roll unless they were held in trust by the federal government, which gave rise to the present dispute.

Plaintiffs (the Indian landowners, Baraga and L'Anse Townships, and Baraga County) sought mandamus and an order to show cause in the Baraga Circuit Court. The trial court ordered mandamus, and the Court of Appeals affirmed, holding that defendant was in privity with the local units of government in regard to property tax appeals before the tribunal and, as such, the doctrine of res judicata applied to

4

bind defendant to the terms of consent judgments entered by the Tax Tribunal in matters where defendant was not a party.[2] We granted defendant's application for leave to appeal.

## II

We must first determine whether the trial court properly issued the order of mandamus. An order of mandamus will only be issued if a plaintiff proves it has a "'clear legal right to performance of the specific duty sought to be compelled' and the defendant has a 'clear legal duty to perform such act . . . .'" *In re MCI Telecommunications*, 460 Mich 396, 443-444; 596 NW2d 164 (1999), quoting *Toan v McGinn*, 271 Mich 28, 34; 260 NW 108 (1935). We review a trial court's decision regarding an order of mandamus for abuse of discretion. *Id.* at 443.

## III

### A. Privity

Defendant asserts that plaintiffs did not establish they had a "clear legal right" to force defendant to abide by the terms of the consent judgment because defendant was not a party to the tribunal proceedings. The Court of Appeals disagreed and concluded that the consent judgment was binding on defendant under the principle of res judicata. There are three prerequisites to the application of the doctrine of res

___

[2]243 Mich App 452, 454-456; 622 NW2d 109 (2000).

judicata: "a prior decision on the merits; the issues must have been resolved in the first case . . . ; and both actions must be between the same parties or their privies." *Sloan v Madison Heights*, 425 Mich 288, 295; 389 NW2d 418 (1986). Further, the burden of proving the applicability of the doctrine of res judicata is on the party asserting it. *Id.*

We disagree with the Court of Appeals that defendant was in privity with plaintiffs Baraga Township and L'Anse Township.[3] The Court of Appeals stated that "[p]rivity between a party and a nonparty requires both a 'substantial identity of interests' and a 'working or functional relationship . . . in which the interests of the nonparty are presented and protected by the party in the litigation.'" 243 Mich App 456, quoting *Phinisee v Rogers*, 229 Mich App 547, 553-554; 582 NW2d 852 (1998) (citations and internal quotation marks omitted). This definition of privity was taken from *Phinisee*, an action involving a paternity judgment, in which the Court of Appeals adopted the definition from a Colorado paternity case.[4] Thus, the Court of Appeals applied a

---

[3]Because we hold that plaintiffs have failed to prove privity, we need not decide whether plaintiffs have satisfied the other requirements for the application of res judicata. *Sloan,* 425 Mich 295.

[4]*SOV v Colorado*, 914 P2d 355, 360 (Colo, 1996), quoting *Public Service Co v Osmose Wood Preserving, Inc*, 813 P2d 785, 787 (Colo App, 1991) (involving an indemnification agreement).

definition of privity that originated in cases involving *private* parties. In this case, the parties involved are governmental units.

There is law directly describing how privity applies among governmental units. Both Corpus Juris Secundum and American Jurisprudence Second indicate that there is no privity in this situation. 50 CJS, § 869, Judgments, p 443, states:

> A state may be bound by a judgment for or against a public officer, or agency, but only with respect to a matter concerning which he or the agency is authorized to represent it, and it is not bound by a judgment to which a subordinate political subdivision was a party in the absence of a showing that such political body had an interest in the litigation as a trustee for the state.

47 Am Jur 2d, Judgments, § 700, p 167, states:

> Courts have also generally found that no privity exists between state and federal governments, between the governments of different states, or between state and local governments.

We agree with both these statements. As 50 CJS, § 869 indicates, there may be specific circumstances under which the state may be bound by a judgment to which a subordinate political division was a party and the state was not, such as when the subordinate political subdivision is found to have been acting as a trustee for the state. Such circumstances are not present here.

While the definition of privity applied by the Court of

Appeals may be applicable in determining privity between private parties, a determination that is not before this Court, we hold today that privity does not exist in this case to bind the state by a judgment entered into by a subordinate political division.

B. Differing Roles of Townships and the Commissions

The Court of Appeals concluded that defendant was in privity with plaintiffs Baraga Township and L'Anse Township, reasoning:

> Both townships were required by statute to carry out assessments of properties within their boundaries. MCL 211.10. Defendant was also charged by statute to "take such measures as will secure the enforcement of the provisions of this act, to the end that all the properties of this state liable to assessment for taxation shall be placed upon the assessment rolls . . . ." MCL 211.150(1). The governmental entities that signed the consent judgment were charged with assessing property and collecting taxes, and, therefore, had a "substantial identity of interests" with defendant and represented the same legal right. The townships secured that interest when they negotiated to have the KBIC make payments in lieu of the taxes that normally would have been assessed. [*Baraga Co*, 243 Mich App 456-457 (citation omitted).]

The Court of Appeals erred in focusing on the fact that the townships carry out the same set of property tax laws that defendant is required to enforce. Rather, the Court should have focused on the differing roles of the townships, to carry out the tax laws, versus defendant, to step in if the townships fail to carry out their duties. It properly noted

8

that, under MCL 211.10, the townships were required to carry out assessments of properties within their boundaries. However, the townships, in defendant's view, *removed* taxable property from the tax rolls. This must be an example of the type of situation in which defendant is charged with intervening so as to secure uniformity in the implementation of the provisions of the General Property Tax Act. MCL 211.150 states:

> It shall be the duty of the commission: (1) To have and exercise general supervision over the supervisors and other assessing officers of this state, and to take such measures as will secure the enforcement of the provisions of this act, to the end that all the properties of this state liable to assessment for taxation shall be placed upon the assessment rolls and assessed at that proportion of true cash value which the legislature from time to time shall provide pursuant to the provisions of article 9, section 3 of the constitution.

Given the supervisory role that the Legislature has assigned to defendant over local assessors, it would be inconsistent with the statutory scheme to allow agreements entered into by such local assessors to bind defendant. Accordingly, we fail to see, even using the definition of privity applied by the Court of Appeals, how the parties could have a "substantial identity of interests" and represent the same legal right when defendant is empowered to intervene if it concludes that municipalities have failed to place taxable property on the tax rolls and defendant is specifically charged with

exercising general supervision over local assessors.

Further, we reject the Court of Appeals reasoning that this is all somewhat academic because "[t]he townships secured that interest [the interest in proper payment of taxes] when they negotiated to have the KBIC make payments in lieu of the taxes that normally would have been assessed."  243 Mich App 457.  Whether the taxes effectively got paid is important, of course, but it is not to this alone that the statute is directed.  Under MCL 211.150(1), defendant is charged with ensuring that all taxable properties are placed on the assessment rolls.[5]  Plaintiffs and defendant cannot be representing the same legal right or have a substantial identity of interests if the townships purposefully did not place taxable properties on the assessment rolls, an action that defendant is required to ensure.

### C.  Estoppel

Plaintiffs ask this Court to find privity between defendant and the townships, arguing that the history of this case creates an estoppel to deny privity.  In support of this theory, plaintiffs claim that the Baraga Township supervisor

---

[5]That this is indeed not academic can be seen from the fact that certain state-to-local aid formulas key on those very rolls and their cumulative taxable values.  See, e.g., MCL 380.1226 (requiring a county treasurer to provide a statement of assessed valuation of each school district or fraction of a school district in a county).

"repeatedly contacted" a member of the commission regarding the taxable status of the properties at issue for 1992-1994 and informed him of the proceedings.  Moreover, plaintiffs assert that the supervisor repeatedly requested guidance from defendant, but the requests were ignored, thus, consigning the townships to represent themselves in the tribunal proceedings. Given all this, plaintiffs argue that there was acquiescence so as to estop the State Tax Commission from challenging the outcome of the litigation.

In countering this estoppel theory, defendant argues here, as it did in the Court of Appeals, that nothing in the legislation establishing lines of authority provides that the State Tax Commission must render aid to local assessors or be estopped to assert certain positions because of that.  The Court of Appeals, in deciding for plaintiffs disagreed.  The Court relied on MCL 209.104 to conclude that defendant was "statutorily required" to render assistance to plaintiffs. MCL 209.104 states in part:

> The state tax commission shall have general supervision of the administration of the tax laws of the state, and shall render such assistance and give such advice and counsel to the assessing officers of the state as they may deem necessary and essential to the proper administration of the laws governing assessments and the levying of taxes in this state.

We disagree that this section *required* defendant to provide assistance merely because an assessing officer

11

requested it.  It follows, therefore, that we also disagree with the estoppel argument that is based upon this flawed "requirement to assist" concept.

The statute states that the commission "shall render such assistance . . . *as they may deem necessary and essential . . . .*"[6]  This section of the statute is designed to outline the duties of the State Tax Commission.  One of those duties is to provide "advice and counsel to the assessing officers of the state."  The statute then qualifies this obligation by providing that the advice shall be "as *they* may deem necessary and essential to the proper administration of the laws governing assessments and the levying of taxes in this state." (Emphasis added.)  Because the predicate of the statutory scheme is that defendant possesses greater expertise than the subordinate assessing officers, it is logically necessary that defendant-not the recipients of any advice-must determine what

---

[6]While we recognize that "they" is a plural pronoun, "they," as used in this statutory provision, must refer to the "state tax commission" even though this is a singular noun. This construction is required to make the rest of the statute organizationally coherent.

> [T]he entire act must be read, and the interpretation to be given to a particular word in one section arrived at after due consideration of every other section so as to produce, if possible, a harmonious and consistent enactment as a whole. [*Grand Rapids v Crocker*, 219 Mich 178, 182-183; 189 NW 221 (1922).]

advice is "necessary and essential."

Thus, construing the statute in this fashion, it is within the discretion of defendant when or if it renders assistance. Defendant is never "required," except by its own good-faith judgment, to render assistance to anyone under this statute. Therefore, we refuse to find privity on the basis of an estoppel theory.

### D. Practical Efforts

We would also point out that defendant argues convincingly that plaintiffs' position is unworkable if for no other reason than that there could be between 7,000 and 10,000 property tax disputes filed yearly in the tribunal, most of which are disposed of through consent judgments. Clearly, defendant could not have been expected by the Legislature to routinely monitor these proceedings to ascertain whether the state's interests are being adequately represented by the local units of government. Thus, in addition to the language of the statute controlling the relationship between the State Tax Commission and the local assessors, we note that the way these cases are handled militates against plaintiffs' position.

### IV

The consent judgment entered by the tribunal is not enforceable against defendant, which was not a party to the

13

tribunal proceedings. Privity does not exist in this case to bind the state by a judgment entered into by a subordinate political division. Therefore, res judicata cannot be applied to bind defendant by the consent judgment. Without res judicata, plaintiffs cannot satisfy the requirements for an order of mandamus because they have no legal right to the performance requested. Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the trial court for entry of a denial of plaintiffs' request for an order of mandamus.

CORRIGAN, C.J., and WEAVER, KELLY, TAYLOR, YOUNG, and MARKMAN, JJ., concurred with CAVANAGH, J.